FILED

2014 FEB 27  PM 3: 48

CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  Robert F. Brennan, Esq. [S.B. #132449]
   **LAW OFFICES OF ROBERT F. BRENNAN, A P.C.**
2  3150 Montrose Ave.
   La Crescenta, Ca. 91214
3
   [818] 249-5291
4  FAX [818] 249-4329
   Email: rbrennan@brennanlaw.com
5
   Attorney for Plaintiffs Monika Arefi
6

7

8

9              **UNITED STATES DISTRICT COURT**

25             **CENTRAL DISTRICT OF CALIFORNIA**

11                                        CV14-1500 CAS (RZx)

12  MONIKA AREFI, Individual;          )  Case No.:
                                       )
13          Plaintiff,                 )  **COMPLAINT FOR DAMAGES**
                                       )  **AND INJUNCTIVE RELIEF:**
14          vs.                        )
                                       )     1. **CIVIL CONSPIRACY—RICO**
15  J.P. MORGAN CHASE NATIONAL         )        **VIOLATION.**
    CORPORATE SERVICES, INC., a        )
16  national association; MIRACLE DAY  )
    INVESTMENTS LLC, a business        )  **JURY TRIAL DEMANDED.**
17  entity, form unknown; IMPERIAL     )
    MORTGAGE CORPORATION, a            )
18  business entity, for unknown; and  )
    DOES 1-100, INCLUSIVE              )
19                                     )
            Defendants.                )
20                                     )
                                       )
21  _____)

22      1.  At all times relevant to this action, Plaintiff MONIKA AREFI has owned
23          and resided at the real property commonly known as 805 N. Rodeo
24          Drive, Beverly Hills, CA (Hereinafter "Property").
25
        2.  Defendant, JP MORGAN CHASE BANK, N.A. (Hereinafter "CHASE")
26
            is a New York Corporation, and is a national bank with its principle
27
            place of business in New York, New York with its agent for service of
28

_____

                    COMPLAINT FOR DAMAGES

process as CT Corporation System located at 818 W. Seventh Street, Los Angeles, CA 90017. At all times referenced herein "CHASE" purported to have authority to conduct business within the State of California on a regular basis.

3. Plaintiff is informed and believes and thereon alleged that Defendant MIRACLE DAY INVESTMENTS, LLC ("MIRACLE") is a private entity.

4. Defendant Imperial Mortgage Corporation ("IMPERIAL") as foreclosure trustee doing business in the County of Los Angeles, State of California.

5. Plaintiff is ignorant of the true names and capacities of Defendants and sues such Defendants as DOES 1-100 INCLUSIVE and, therefore, sure these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the injuries to Plaintiff alleged herein, and that such injuries as herein alleged were proximately caused by such Defendants.

6. Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned that each of the Defendants were the agents, employees, partners, joint ventures, successors or predecessors in interest, owners, principals, and employers of the remaining Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency, partnership, employment, ownership, or joint venture. Plaintiff is further informed and believes and based thereon alleges that the acts and conduct herein alleged of each such Defendants were known to, authorized by, and/or ratified by the other Defendants, and each of them.

COMPLAINT FOR DAMAGES

7. Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the said allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

## CONSPIRING OFFICERS, EMPLOYEES AND AGENTS OF DEFENDANTS

8. Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts, each of them acted with an awareness of its primary wrongdoing.

9. Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of herein was for Defendants to incur a financial gain at the expense of Plaintiffs losing their home. Defendants in this case and many other cases have been able to achieve the aims of this conspiracy through misrepresenting and concealing material information regarding the servicing of loans and by taking steps and making statements in furtherance of their wrongdoing as specified herein.

## JURISDICTION AND VENUE

10. Federal question jurisdiction exists by virtue of 18 U.S.C. Section 1961 *et seq.* Venue is proper for this Court since the Property is located in the County of Los Angeles and because the events or events out of which this action arises and which form the basis for this action arise in the County of Los Angeles.

## FACTUAL BACKGROUND

11. For valuable consideration, Plaintiff MONIKA AREFI purchased Property and thereby recorded a Grant Deed with the county recorder on February 7, 1997.

12. Subsequently on or about September 6, 2006, Plaintiff executed a promissory note ("Note") in favor of Washington Mutual Bank in the amount of Four Million Eight Hundred Ten Thousand dollars ($4,810,000.00) secured by deed of trust to Property ("first loan" or "first trust deed").

13. On or about November 29, 2006, Plaintiff secured a credit line on the Property with Washington Mutual Bank in the amount of Seven Hundred and Fifty Thousand Dollars ($750,000.00) ("second loan" or "second trust deed").

14. In or about 2009, Washington Mutual Bank was placed in to a receivership with the Federal Deposit Insurance Corporation ("FDIC") due to severe financial instability. The FDIC then sold various Washington Mutual assets, including both the first and second loans secured by plaintiff's property, to CHASE. Through approximately September of 2013, for approximately seven years, CHASE owned both the first and second loans on the Property.

---

COMPLAINT FOR DAMAGES

## THE HOME AFFORDABLE MODIFICATION PROGRAM "DUAL TRACKING"

15. Pursuant to the Emergency Economic Stabilization Act of 2008, the U.S. Department of Treasury implemented the Home Affordable Modification Program ("HAMP") as a program designed to provide affordable mortgage loan modifications and other alternatives to foreclosure for eligible borrowers. *See* Pub.L. No. 110-343, 122 Stat. 3765 (codified as amended at 12 U.S.C. Sections 5201-5253). The centerpiece of the statute was the Trouble Asset Relief Program ("TARP"), through which the Secretary of the Department of Treasury was delegated broad powers to mitigate the financial impact of the foreclosure crisis and preserve homeownership. 12 U.S.C. Sections 5201, 5211-5241. Acting under this authority, the Secretary of the Treasury announced the "Making Home Affordable Program" in February 2009. One sub-part of this program is the HAMP. The goal of HAMP is to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt.

16. Under HAMP, loan servicers are provided with at least $1,000 incentive payments from the government for each permanent mortgage loan modification completed. *See Bosque* 762 F.Supp.2d 342 (2011), at 347. Servicers must then use a two-step process for HAMP modification. Step one includes an eligibility criteria, which borrowers must meet in order to qualify for a Trial Period Plan ("TPP"). Step two involves providing the borrower with an Agreement that outlines the terms of the final modification. (SD 09-01 at 14).

17. However, lenders have misused the HAMP system, by engaging in what Attorney Generals call, "dual tracking," but for homeowners struggling to avoid foreclosure it may as well be called double-crossing. Dual tracking refers to what is now a common lender tactic, where while a borrower in default seeks an alternative loss mitigation strategy (e.g. a short sale or a loan modification), the lender quietly continues to pursue and foreclosure at the same time. In the meanwhile, in order to drag out the process, the bank sends ongoing of requests to the borrower to send additional documentation (which is often documents the borrower has already provided). As the borrower is lulled into thinking that his or her home will not be taken away, and as the bank continues to send ongoing duplicative requests for more information, the trustee's sale date sneaks upon the borrower and on the sale date the bank immediately swoops in and conducts the trustee sale in the midst of the loan medication process.

18. As a result of the lender's misuse of the HAMP system as well as unsound banking practices, effective January 1, 2013, Attorney General Kamala D. Harris's Homeowner Bill of Rights protects homeowners and borrowers during the mortgage and foreclosure process. The Homeowner Bill of Rights prohibits a series of inherently unfair bank practices that have needlessly forced thousands of Californians, including Plaintiff into defaulting on the mortgages. The law restricts dual-track foreclosures, where a lender forecloses on a borrower despite being in discussions over a loan modification to save the home. It also guarantees struggling homeowners a single point on contact at their lender with knowledge of their loan and direct access to decision makers, and imposes civil penalties on fraudulently signed mortgage documents. In addition, homeowners may require loan servicers to document this right to

1    foreclose.

2    19. The Homeowner Bill of Rights builds upon and extends reforms first
3        negotiated in the recent national mortgage settlement between 49 states
4        and leading lenders. Attorney General Harris secured up to $18 billion
5        for California homeowners in that agreement, and has also built a
6        Mortgage Fraud Strike Force to investigate crime and fraud associated
7        with mortgages and foreclosures. The Homeowner Bill of Rights consists
8        of a series of related bills, including two identical bills that were passed
9        on July 2, 2012 by the state Senate and Assembly: AB 278 (Eng, Feuer,
25       Perez, Mitchell) and SB 900 (Leno, Evans, Corbett DeSaulnier, Pavley,
11       Steinberg).

12   20. HAMP and the Homeowner's Bill of Rights primarily afford protection
13       for homeowners who have defaulted on a first trust deed.  In essence,
14       banks and lenders like CHASE must, in good faith, pursue non-
15       foreclosure remedies for distressed homeowners with defaulted first trust
16       deeds.  However, HAMP and the Homeowner's Bill of Rights afford less
17       protection for homeowners who have defaulted on a second trust deed:
18       there is no formal legal requirement that banks and lenders pursue in
19       good faith non-foreclosure remedies when homeowners have defaulted
20       on second trust deeds.

21   21. In or about April of 2012, defendant CHASE entered into a consent
22       judgment known as the National Mortgage Settlement ("NMS").  The
23       NMS affords many of the same protections for consumers with second
24       trust deeds as are found in the Homeowner's Bill of Rights for
25       consumers with first trust deeds.

26   22. Because of serious economic hardships and reversals, plaintiff fell
27       delinquent and into default on both the first and second loans on the

28

---

COMPLAINT FOR DAMAGES

property. In response to the defaults, CHASE and DOES 1-100 had some good faith options. CHASE and DOES 1-100, inclusive, could have meaningfully and sincerely pursued a loan modification with plaintiff, honoring both the letter and spirit of HAMP, the NMS and Homeowner's Bill of Rights. Instead, however, CHASE and DOES 1-100, Inclusive, assigned or transferred the second trust deed to Miracle Day Investments, LLC ("MIRACLE DAY"), which was not a signatory to the NMS and, because the assigned loan was the second trust deed, not subject to HAMP or the Homeowner's Bill of Rights.

23. Assignment to MIRACLE: CHASE first attempted to circumvent the requirements and policies favoring loan modification in May of 2013, when it attempted to substitute MIRACLE DAY INVESTMENTS, LLC as trustee for the second trust deed on or about May 20, 2013. MIRACLE then promptly attempted to substitute defendant Imperial Mortgage Corporation ("IMPERIAL") as foreclosure trustee, which gave notice of a trustee's sale for August of 2013. However, since MIRACLE did not have a beneficial interest in the property as of May of 2013, MIRACLE'S attempted substitution to IMPERIAL was fatally defective, and IMPERIAL had to cancel its efforts to foreclose on the Property.

24. Plaintiff then submitted a loan modification package to CHASE on or about June 26, 2013, attempting to modify the first trust deed. This followed several previous unsuccessful attempts to obtain a loan modification. Pursuant to HAMP, the NMS and the Homeowner's Bill of Rights, CHASE had a duty and obligation to pursue good faith alternatives to foreclosure with plaintiff.

25. Rather than exploring good faith alternatives to foreclosure, CHASE and DOES 1-100, Inclusive, chose instead to pursue a particularly insidious

form of "dual tracking". "Dual tracking" refers to the now-forbidden practice by many lenders of stringing consumers along with promises of loan modifications, all the while quietly, yet aggressively and swiftly, pursuing foreclosure on the properties. Here, CHASE and DOES 1-100, Inclusive, intentionally and deliberately circumvented HAMP, the NMS and the Homeowner's Bill of Rights by re-assigning the second trust deed to MIRACLE, which then promptly commenced foreclosure proceedings while the loan modification application for the first trust deed was still pending.

26. MIRACLE, IMPERIAL and DOES 1-100, Inclusive, did in fact foreclose on the Property on or about December 6, 2013, one day after plaintiff filed a lawsuit against MIRACLE and other defendants in the Los Angeles Superior Court.

27. MIRACLE and DOES 1-100, Inclusive, foreclosed with full knowledge of the fact that CHASE had owned both the first and second loans on the property, and with full knowledge that there was no common-sense, legal explanation for CHASE to assign out the second loan for foreclosure when CHASE at all times had it within its powers to pursue foreclosure as an option on the first loan. Because of its aborted foreclosure in May of 2013 and because of correspondence and communications with plaintiff and with plaintiff's counsel and representatives, MIRACLE and DOES 1-100, Inclusive, at all times had knowledge of at least the following facts: that CHASE owned both first and second loans for several years before May of 2013; that CHASE assigned out the second loan rather than the first loan to MIRACLE; that both the first and second loans were distressed loans; that plaintiff was actively pursuing remedies under HAMP, the NMS and the Homeowner's Bill of Rights

for the first loan; and that a foreclosure on the second loan would effectively circumvent and frustrate the letter and intent of HAMP, the NMS and the Homeowner's Bill of Rights and would constitute a particularly insidious form of "dual tracking". In spite of this knowledge, MIRACLE and DOES 1-100, Inclusive, aggressively and unfairly pursued foreclosure on the second loan.

28. Defendants' interest in foreclosing on the property and in not pursuing an alternative to foreclosure can be easily explained by the fact that the Property has substantially regained its value since the depths of the recession. The Property currently is encumbered by approximately $6 million in loans, yet has a probable market value substantially higher than that. With its "profits before people" mentality, defendants have conspired and schemed to foreclose on the property although there were substantial non-foreclosure alternatives which would have benefitted all parties involved.

## ALLEGATIONS OF CONSPIRACY

29. Defendants CHASE, MIRACLE DAY, IMPERIAL and DOES 1-100, Inclusive, agreed and combined to engage in a conspiracy in the following manner: Defendant CHASE transferred/sold the second loan of Property to Defendant MIRACLE at a substantially discounted price for the sole purpose of having Defendant MIRACLE foreclose on Property, thereby depriving Plaintiff of the protections and benefits of HAMP, the NMS and the Homeowner's Bill of Rights.

30. Within CHASE itself, there existed a conspiracy to deprive plaintiff of her property and her rights. Plaintiff alleges that different departments

and different persons within CHASE separately administered the first
and second trust deeds.  Faced with plaintiff's remedial rights under
HAMP, the NMS and the Homeowner's Bill of Rights, these separate
departments and persons within CHASE, herein known on an interim
basis as DOES 1-100, conspired to assign the second trust deed for
foreclosure proceedings so as to avoid the consumer remedies available
to plaintiff under the first trust deed.

31. Defendants and each and every one of them, agreed and/or combined to
engage in a civil conspiracy to commit the unlawful acts as described in
this complaint.

32. Defendants, and each and every one of them, combined to engage in a
civil conspiracy of which the principle element was to inflict wrongs
against and/or injury on Plaintiff as described in the complaint.

33. Defendants, each and every one of them, acquired, possessed, and
maintained a general knowledge of the conspiracy's objectives to inflict
wrongs against and/or injury on plaintiff as described in this complaint.

34. Defendants, each and every one of them, combined to engage in a
scheme that was intended to violate the law and concealed the secreted
scheme.

35. Defendants, each and every one of them, combined to engage in a
scheme that was intended to violate the rights of plaintiff.

## FIRST CAUSE OF ACTION
### [VIOLATION OF CIVIL RICO ACT
### AGAINST CHASE, MIRACLE DAY, IMPERIAL AND
### DOES 1-100, INCLUSIVE]

36. Plaintiff incorporates all preceding paragraphs as though alleged in full

1   in this cause of action.

2   37. The affairs and business operations of CHASE, MIRACLE DAY,

3   IMPERIAL and DOES 1-100 affect interstate commerce.

4   38. The orchestrated foreclosure abuses and deliberate and knowing attempts

5   to circumvent and frustrate HAMP, the NMS and the Homeowner's Bill

6   of Rights as described in the preceding paragraphs constitute an

7   "enterprise", and the conspiracy and cooperation of CHASE, persons

8   within CHASE, MIRACLE DAY, IMPERIAL and DOES 1-100,

9   Inclusive, constitute a conspiracy to violate the remedial provisions of

25   the civil RICO Act.

11   39. Defendants CHASE, MIRACLE DAY, IMPERIAL and DOES 1-100,

12   Inclusive, engaged in racketeering activity as follows:

13        a.   On at least two occasions, CHASE assigned out for foreclosure,

14             and MIRACLE accepted the assignment of, the second trust deed

15             on the Property, knowing that such action would deprive plaintiff

16             of her rights under HAMP, the NMS and the Homeowner's Bill of

17             Rights and other remedial statutes;

18        b.   Such conduct by CHASE, MIRACLE DAY, IMPERIAL and

19             DOES 1-100, Inclusive, was undertaken specifically to defraud

20             plaintiff of her rights and property.  Specifically, CHASE,

21             MIRACLE DAY, IMPERIAL and DOES 1-100, Inclusive, have

22             recognized that the indebtedness on the property is less than the

23             property's current value, which continues to appreciate, and the

24             defendants have conspired and agreed to wrongfully foreclose

25             upon plaintiff's property and share the profits from the property's

26             sale, thereby wrongfully depriving plaintiff of the equity which

27             had been building, and continues to build, in her property;

28

COMPLAINT FOR DAMAGES

c. Defendants CHASE, MIRACLE DAY, IMPERIAL and DOES 1-100, Inclusive, used the United States mails, telephone lines and/or internet lines to accomplish such fraud.  Specifically, CHASE, MIRACLE DAY, IMPERIAL and DOES 1-100, Inclusive, used mail, telephone and internet lines to formulate the fraudulent scheme, to assign the loan from CHASE to MIRACLE DAY and then to IMPERIAL, to mail out and otherwise communicate foreclosure-related documents including the Notice of Default and Notice of Trustee's Sale and for the conspirators to communicate amongst themselves.

d. The eight-month history of attempting to foreclose on the second loan to avoid the remedies available under the first loan constitutes an ongoing pattern of racketeering activity.

40. As a direct consequence of defendants' pattern of racketeering activity and violations of RICO, plaintiff has suffered damages to her property and general and special damages according to proof.

41. Under RICO, plaintiff is entitled to treble damages according to proof, as well as her attorney's fees, costs and expenses.  Plaintiff is also entitled to such injunctive relief as may be available to prevent wrongful foreclosures or other wrongful or unlawful attempts to dispossess her of her home.

WHEREFORE, plaintiff prays for the following:

1. For general and special damages according to proof;

2. For treble damages under RICO;

3. For injunctive relief as reasonable and necessary to halt any and all

COMPLAINT FOR DAMAGES

foreclosure proceeding upon the subject property;

4. For injunctive relief as reasonable and necessary to halt any unlawful detainer actions pending or contemplated upon plaintiff;

5. For injunctive relief as reasonable and necessary to compel CHASE to engage in and explore reasonable loan modification alternatives with plaintiff;

6. For attorney's fees, costs and expenses; and,

7. For such other relief as the court deems necessary.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Dated: _27__ /_____/2014

**LAW OFFICES OF ROBERT F. BRENNAN, A P.C.**

By:_____
Robert F. Brennan
Attorney for Plaintiff

---

COMPLAINT FOR DAMAGES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Christina A. Snyder_____ and the assigned Magistrate Judge is _____Ralph Zarefsky_____ .

The case number on all documents filed with the Court should read as follows:

## CV14-1500-CAS(RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____February 27, 2014_____
Date

By  C. Sawyer _____
Deputy Clerk

---

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

[x] Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

[ ] Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

[ ] Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
MONIKA AREFI, an Individual;

**DEFENDANTS**
J.P. MORGAN CHASE NATIONAL CORPORATE SERVICES, INC., a national association; MIRACLE DAY INVESTMENTS LLC, a business entity, form unknown; IMPERIAL MORTGAGE COMP.

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):
Los Angeles California

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):
Los Angeles, California

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Robert F. Brennan, Esq. SBN 132449
LAW OFFICES OF ROBERT F. BRENNAN AP.C.
3150 Montrose Ave.
La Crescenta, CA 91214 Telephone 818-249-5291

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT:** $ 300,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Fair Credit Reporting Act 15 U.S.C. Sec. 1681

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☒ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities /Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise
REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

TORTS
PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

TORTS
PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability
BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157
CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities - Employment
☐ 446 American with Disabilities - Other
☐ 440 Other Civil Rights

PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition
FORFEITURE / PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act
PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark
SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s):

FOR OFFICE USE ONLY: Case Number: **CV14-1500**

CV-71 (07/05) | CIVIL COVER SHEET | Page 1 of 2

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

### AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
  Los Angeles, California

List the California County, or State if other than California, in which EACH named defendant resides. (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
  MIRACLE DAY - California
  JP MORGAN CHASE - New York
  IMPERIAL MORTGAGE - CALIFORNIA

List the California County, or State if other than California, in which EACH claim arose. (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.
  Los Angeles County

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date _____ Feb. 27 2014

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |